IN THE UNITED STATES DISTRICT COURT
SOUTHER DISTRICT OF FLORIDA

CASE NO. 95-6217-CR-GONZALEZ
96-6199-CR-HURLEY

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                         MAGISTRATE JUDGE SNOW

FRANCO NICOLETTI

    Defendant.
_____/

## MOTION TO DISSOLVE DETENTION ORDER
## [WITH AUTHORITIES]

COMES NOW Franco Nicoletti, through the undersigned counsel, pursuant to Title 18 USC §3142(f) and other applicable provisions of the "Release and Detention" Statute and makes this Motion to the Court that the Court Dissolve its Detention Orders in the Franco Nicoletti matters, admit the Defendant to release in both Case Number 96-6199-CR-Hurley and in case number 95-6217-CR-Gonzalez and the Defendant states the following:

1.    The Court, by an Order dated December 16, 1996, directed that the Defendant, from that day forward, be held in pre-trial detention for the two cases pending in the United States District Court.

2.    This Court had a pre-trial detention hearing in the "Gonzalez" matter in February of 1996, as remembered on page 3 of the Detention Order, and released the Defendant, as noted.

3.    Due to the Defendant's arrest on the "Hurley" matter, that release was revoked, detention was ordered in both matters, and the Defendant has been in custody since November, 1996, over one year.

4. Trials in the above matters were set for September in the Judge Gonzalez case and November in the Judge Hurley case. Both cases went to trial and in each matter the jury was unable to reach a verdict. The Judge Hurley matter was mistried on December 9, 1997. Trial has been reset for February in the Judge Hurley matter and has not yet been set in the Judge Gonzalez matter.

5. The undersigned is, at this juncture scheduled, and it appears he will begin trial in mid January in the District of Nevada, <u>U.S.A. v. David Jones, et al.</u>, Case No. S-96-287-LDG(LRL).

6. The Defendant has, inter alia in June 1997 and October 1997 [after the Judge Gonzalez trial] made Motions to Dissolve the Detention Orders, which were denied. The Defendant attaches the same as A.1 and A.2 to this Motion and adopts the same as if they were set forth in haec verba.

7. The Defendant is presently being held in the Palm Beach County jail.

8. The Defendant submits that the length of detention at this juncture, as well as the foreseeable detention to retry the Defendant when time becomes available is such that the Defendant should be ordered released on some type of conditions.

9. The Defendant submits that he is amenable at this juncture to pre-trial release under conditions that the Court could fashion that could accomplish the purpose of release in conjunction with the Statute, particularly after the length of detention and the fact that trial may be some months off.

10. It need be remembered that the crimes charged are not crimes of violence, nor are they drug charges; there is no allegation that the Defendant has been attempting to tamper with a witness or obstruct justice. The Defendant has hired lawyers to <u>defeat</u> the Government's attempts

2

to deport him, so he certainly is not a risk or flight. The Defendant is not a danger to the community does not deal drugs and is not a violent person. Hence neither the public nor the witnesses are in danger.

11. The Court could certainly, in conjunction with pre-trial release, fashion conditions of release that would ensure what the Statute seeks to achieve.

12. The detention of the Defendant, at this juncture, has become quite extended and trial is still a good deal away and is of such a duration as to compel release [compare: *United States v. Columbo*, 777 F.2d (2 Cir. 1985), compare also *United States v. Gonzalez-Claudio*, 806 F.2d 334 (2 Cir. 1986).

Title 18 USC §3142(f)(2)(b) provides:

> The hearing may be reopened before or after a determination by the judicial officer, at any time before the trial if the judicial officer finds that information exists that was not know to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community.

It need also be remembered that some of the factors the Court should under section (g) are:

> (1). The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
>
> (2). the weight of the evidence against the person;
>
> (3). the history and characteristics of the person, including -
>
> > (a). the person's character, physical and mental condition, family ties, employment, financial resources, length or residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record

concerning appearance at court proceedings;

The Court previously considered these in admitting the Defendant to bail, however, in the ensuing thirteen months of detention, it is quite clear as to <u>each</u> case, the strength of the case against the Defendant has been such that a conviction was not had.

The Defendant has never failed to appear, has never threatened a witness or obstructed justice. He is a non-violent, non-drug offender and non-danger to the community. The Court has the power to fashion conditions as noted, and the Defendant would so request.

13. The above factors, particulary the non-violent nature of the charges and the Defendant's expenditures of monies to <u>stay in the United States</u>, satisfies the "burden" if such it be that the Defendant is "either not dangerous or not likely to flee if turned loose on bail", <u>United States v. Quartermaine</u>, 913 F.2d 910, (11 Cir. 1996) at 916.

The Defendant constitutes a danger to <u>no</u> individuals or the community as save not only be his passive months on bond but now further, by the most favorable "turns" his cases are taking.

14. The Defendant, as this Court knows, has a wife of substantial wealth in the community, he has children in the United States, he owns real estate in Florida. He remained within South Florida other than when permission to travel to New York was sought without incident.

There has never been a suggestion of the Defendant having a firearm or engaging in threats or violence save the allegations of Mr. Stack.

Mr. Stack attempted to prosecute Mr. Nicoletti in State Court in Palm Beach County and the matter was nolled due to Mr. Stack's lack of truthfulness. His assault allegations against the Defendant are such that no one will try the case and the Defendant has refused any misdemeanor he chooses to let the State bow out.

Under *Quartermaine*, the line of cases cited therein and the Statute itself, the Court upon reconsideration should dissolve the Detention Order and admit the Defendant to bail.

WHEREFORE the Defendant moves that his Motion to Dissolve Detention Order be granted.

I HEREBY CERTIFY that a true and correct copy of the foregoing Motion has been furnished by U.S. Mail to Scott Behnke, Office of the United States Attorney, 299 East Broward Boulevard, Fort Lauderdale, Florida 33301, this 11 day of December, 1997.

> FRED HADDAD
> One Financial Plaza, Suite 2612
> Fort Lauderdale, Florida 33394
> Tel: (954) 467-6767
>
> By: _____
> FRED HADDAD
> FBN: 180891

IN THE UNITED STATES DISTRICT COURT
SOUTHER DISTRICT OF FLORIDA

CASE NO. 95-6217-CR-GONZALEZ
96-6199-CR-HURLEY

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                            MAGISTRATE JUDGE SNOW

FRANCO NICOLETTI

    Defendant.
_____/

## MOTION TO DISSOLVE DETENTION ORDER
## [WITH AUTHORITIES AND EXHIBITS]

COMES NOW Franco Nicoletti, through the undersigned counsel, pursuant to Title 18 USC §3142(f) and other applicable provisions of the "Release and Detention" Statute and makes this Motion to the Court that the Court Dissolve its Detention Orders in the Franco Nicoletti matters, admit the Defendant to release in Case Number 96-6199-CR-Hurley and reinstate the previous conditions of release in case number 95-6217-CR-Gonzalez and the Defendant states the following:

    1.    The Court, by an Order dated December 16, 1996, directed that the Defendant, from that day forward, be held in pre-trial detention for the two cases pending in the United States District Court.

    2.    This Court had a pre-trial detention hearing in the "Gonzalez" matter in February of 1996, as remembered on page 3 of the Detention Order, and released the Defendant, as noted.

    3.    Due to the Defendant's arrest on the "Hurley" matter, that release was revoked, detention was ordered in both matters, and the Defendant has been in custody since November, 1996.

A. 1

4.  Trials in the above matters are presently set for September in the Judge Gonzalez case and October in the Judge Hurley case.

5.  Since the Detention Hearing and Order, a number of evidentiary and related matters have arisen that compel a revisiting of the Detention Order.

6.  As to case number 95-6217-CR-Gonzalez discovery including the foreign deposition, has been ongoing and the following information, not previously known and confirmed can be reported.

   a.  At the Detention Hearing, Mr. Behnke in his proffer, stated that the Government would establish that Franco Nicoletti wrote out sheets for Barbara Lifshultz so as to structure transactions at a series of banks as set forth in the Indictment;

   b.  The Government represented an agent of the Florida Department of Law Enforcement would testify the Defendant, Franco Nicoletti, wrote those documents for monies that eventually went to several banks for foreign deposit particularly to Nicofero LTD;

   c.  After obtaining discovery, the Defendant provided to a nationally renowned handwriting expert, Linda Hart, the Government exhibits, as well as handwriting samples of the Defendant, and his brother, Claudio Nicoletti;

   d.  Ms. Hart concluded that the documents directing what the Government pinpoints to be structuring were in fact written by <u>Claudio</u> Nicoletti;

   e.  Pursuant to Court Order, Claudio Nicoletti, an Italian Citizen, was deposed at the American Embassy in Rome on May 22, 1997. The following was

2

learned as the witness testified under oath:

(i). Claudio wrote the documents for the various deposits;

(ii). The bank accounts where the monies were deposited were either Government witness, Lifshultz and/or her husband's or Lifshultz and Claudio's wife, Maria Galvan;

(iii). The restaurants from whence the monies came and for which Lifshultz obtained the "loan" that is Count One were initially owned by Franco Nicoletti's sister, Maria Matterazzi. Lifshultz bought 25%. Claudio then bought the restaurants from his sister, under the name of Nicofero, Florida Corporation. Claudio has four or five other Nicofero Corporations world wide, [i.e. England, Italy, Columbia, Canada] all of which interact business;

(iv). Franco Nicoletti had nothing to do with the restaurants, owned nothing and had no financial interest therein; he occasionally received monies for singing and for bringing his following to the restaurant;

(v). Claudio testified he would sit with Lifshultz and write out the various slips for deposits the Government attributes to the Defendant.

In conclusion, then, an expert witness will testify beyond any doubt, and contrary to the Government's proffer, that Franco Nicolett, did not write the documents in question, Claudio did.

3

Claudio Nicoletti admitted the same in deposition and provided to the Court Reporter the articles of incorporation for all the Nicofero entities, including the Florida restaurant.

7. Continuing as to the Judge Gonzalez case, the Government has provided documents and investigation has revealed that Maria Materazzi., Mr. Terek Halabi and Barbara Lifshultz were involved in the Ciro Pomodoro Restaurant that was the basis for the loan in Count One. Evidence will further establish Hablabi was invovled in the original Ciro's in Los Angeles and was acquainted with numerous people in that city. From the undersigned's understanding and investigation, other than Ms. Lifshultz, there is no evidence connecting Mr. Franco Nicoletti to Count One.

8. Ms. Lifshultz was prosecuted for the structuring counts that Mr. Nicoletti is charged with by Mr. Behnke's predecessor in the Nicoletti sagas, Mr. Mark Johnson. The undersigned has ordered the Government's final argument in that matter, as the undersigned has been advised that Ms. Lifshultz's veracity and candor was seriously questioned by the United States. Under *United States v.McKeon*, those are "agency admissions" type matters that the jury should hear even against the United States and hence Ms. Lifshultz' credibility is open to serious question.

9. In conclusion, based on the evidence as it now exists as opposed to several months ago, the case against the Defendant has been materially lessened, a factor this Court should consider anew.

10. The Court also heard the Detention Hearing in case number 96-6199-CR-Hurley wherein the INS Agent, Don Yungbluth testified. This Court will recall the undersigned asked whether in fact as relates to the money to be placed in Atlanta for the bonds, Nicoletti asked and demanded to know of the banker, whether and to be sure the money was "legitimate". In fact this Court recognized [See page 38 of the Detention Hearing] that based on the proffer and outline the

4

case was quite "triable", but that did not affect detention predicated on the proffer.

11. Again, representations were made in that hearing regarding laundering of drug money that various tapes had these conversations and that Mr. Nicoletti was appraised the monies were drug monies that were the basis for the loan.

12. After a review of the transcripts and tapes by the undersigned and his investigator, a long trained former undercover agent, the only conversation the undersigned is aware of is the informant/banker telling Nicoletti that the disbarred lawyer [now revealed as Mr. Rendina] had, many years ago, represented the "money man" on a <u>drug</u> case. It certainly is not the substantial evidence the Government intimated to support a money laundering charge.

13. The Defendant will proffer that he will be able to establish that as to these bonds that are the basis of the "J" Hurley case, before seeking to arrange a loan thereon, the Defendant's attorney made inquires as to their validity as did another reputable broker that pronounced the bonds as valid. Indeed during the investigation, the Government and its witness deemed the bonds valid. In fact, from the undersigned's understanding these bonds may well <u>not</u> be counterfeit, but certainly the bonds appeared valid at the time.

14. As to the August 1994 Aggravated Battery arrest in Broward County, Florida, the undersigned would advise and proffer that Mr. Peter Holden, a supervisor in the State Attorney's Office, who was assigned the matter, offered the undersigned <u>any misdemeanor the undersigned wanted</u> with a withheld adjudication, withheld sentence to "go away". He tried to Nolle Prosequi, but the alleged victim, Frank Stack, a Government operative in other cases against Nicoletti, and now a civil suit Defendant in a matter being prosecuted by Mr. Nicoletti refused and complained to supervisors. Mr. Stack has asserted in deposition the <u>Government</u> has advised him on other matters

5

relating to Nicoletti.

15. The Defendant has been the subject of several immigration matters, all of which previously have been dismissed. The Defendant has not been deported and prior to the instant cases has freely and continually departed and entered the United States on numerous occasions, including to Argentina [See page 3 of the Detention Order]. The Defendant had no travel restrictions on his State Court Bond, and indeed the State Court Trial Judge was appraised to the Defendant's international travel. [See Exhibits 1 and 2]. The Defendant was detained by INS as he entered the United States and his briefcase searched [See Motion to Suppress in the "Gonzalez" case]. The Defendant has not been deported nor is there any indication the Government will be successful in deporting the Defendant, a veteran of the United States Armed Services. The matter has been stayed pending this case.

16. The loan for the Rolex watch addressed in footnote "2" of the Detention Order was in fact, it is proffered, a loan Lillian Nicoletti made to the owner of Ciro Bella; Mr. Nicoletti handled the paperwork in the matter, but Mrs. Nicoletti put up the money and in fact has the Rolex in her vault.

17. The undersigned, even after a review of his file, the Court's Detention Order and the various Orders filed in the matter is somewhat at a loss regarding the financial reporting requirements. The undersigned in the review of his file has found the Motion for Order of Protection for Pre-Trial Financial Filing dated April 4, 1996, offering "in camera" answers to whatever "pre-trial release concerns might exist". The undersigned also has a copy of the Court's Order of April 23, 1997 ordering the Government to respond by April 29, 1996. A review of the undersigned's file has not unearthed a response. The Court has stated the undersigned was to provide an Order regarding the

financial matter's which the undersigned honestly does not recall and obviously for some seven or eight months it went unaddressed. The undersigned certainly cannot quarrel with the Court's recollection as he has none; however, any failures are obviously the result of the harried and voluminous nature of the case. Counsel has been more than diligent in preparation and discovery and would not intentionally omit to prepare an Order. Surely pre-trial never called the undersigned or obviously the Court.

Be that as it may, the Defendant stands ready, if released to answer <u>all</u> questions to the Court or pre-trial services regarding his finances as long as this is not disseminated to the Government. That the Defendant's fears are justified is illustrated by the several recent pleadings regarding the wholesale fishing expedition the Government is engaging in with the numerous documents seized from his house under the Judge Hurley warrant. The Defendant is engaged in civil litigation against the United States, his suitcase was seized and xeroxed at customs, this Court denied a Motion to Suppress regarding that as the Government said it would use no evidence obtained therefore. The Government attempted to prosecute the Defendant rather unsuccessfully a few years ago [See: <u>USA v. Nicoletti</u>, case number 93-5237-AEV; Order of Dismissal entered March 2, 1994], hence the Defendant's concern that all matters be kept confidential or at least from the prosecution;

18. The Defendant is amenable at this juncture to pre-trial release under conditions that the Court could fashion that could accomplish the purpose of release in conjunction with the Statute;

19. It need be remembered that the crimes charged are not crimes of violence, nor are they drug charges; there is no allegation that the Defendant has been attempting to tamper with a witness or obstruct justice. The Defendant has hired lawyers to <u>defeat</u> the Government's attempts to deport him, so he certainly is not a risk or flight. The Defendant is not a danger to the community

7

does not deal drugs and is not a violent person. Hence neither the public nor the witnesses are in danger.

20.    The Court could certainly, in conjunction with pre-trial release, fashion conditions of release that would ensure what the Statute seeks to achieve.

21.    The detention of the Defendant, at this juncture, has become quite extended and trial is still a good deal away and is of such a duration as to compel release [compare: <u>United States v. Columbo</u>, 777 F.2d (2 Cir. 1985), compare also <u>United States v. Gonzalez-Claudio</u>, 806 F.2d 334 (2 Cir. 1986).

Title 18 USC §3142(f)(2)(b) provides:

> The hearing may be reopened before or after a determination by the judicial officer, at any time before the trial if the judicial officer finds that information exists that was not know to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community.

It need also be remembered that some of the factors the Court should under section (g) are:

> (1).   The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
>
> (2).   the weight of the evidence against the person;
>
> (3).   the history and characteristics of the person, including -
>
>> (a).   the person's character, physical and mental condition, family ties, employment, financial resources, length or residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings;

The Court previously considered these in admitting the Defendant to bail, however, in the ensuing seven months of detention, it is quite clear as to each case, the strength of the case against the Defendant has taken a material departure from what appeared at the Detention Hearings.

The Defendant has never failed to appear, has never threatened a witness or obstructed justice. He is a non-violent, non-drug offender and non-danger to the community. The Court has the power to fashion conditions as noted, and the Defendant would so request.

22. The above factors, particulary the non-violent nature of the charges and the Defendant's expenditures of monies to stay in the United States, satisfies the "burden" if such it be that the Defendant is "either not dangerous or not likely to flee if turned loose on bail", *United States v. Quartermaine*, 913 F.2d 910, (11 Cir. 1996) at 916.

The Defendant constitutes a danger to no individuals or the community as save not only be his passive months on bond but now further, by the most favorable "turns" his cases are taking.

23. The Defendant, as this Court knows, has a wife of substantial wealth in the community, he has children in the United States, he owns real estate in the seven figures in Florida. He remained within South Florida other than when permission to travel to New York was sought without incident.

There has never been a suggestion of the Defendant having a firearm or engaging in threats or violence save the allegations of Mr. Stack.

Mr. Stack attempted to prosecute Mr. Nicoletti in State Court in Palm Beach County and the matter was nolled due to Mr. Stack's lack of truthfulness. His assault allegations against the Defendant are such that no one will try the case and the Defendant has refused any misdemeanor he

9

chooses to let the State bow out.

Under *Quartermaine*, the line of cases cited therein and the Statute itself, the Court upon reconsideration should dissolve the Detention Order and admit the Defendant to bail.

WHEREFORE the Defendant moves that his Motion to Dissolve Detention Order be granted.

I HEREBY CERTIFY that a true and correct copy of the foregoing Motion has been furnished by U.S. Mail to Scott Behnke, Office of the United States Attorney, 299 East Broward Boulevard, Fort Lauderdale, Florida 33301, this ___ day of June, 1997.

> FRED HADDAD
> One Financial Plaza, Suite 2612
> Fort Lauderdale, Florida 33394
> Tel: (954) 467-6767
>
>
> By:_____
>     FRED HADDAD
>     FBN: 180891

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,                CASE NO:   96-6199-CR-HURLEY
                                                    95-6217-CR-GONZALEZ
vs.

FRANCO NICOLETTI,                        MAGISTRATE JUDGE SNOW
       Defendant.
_____/

### DEFENDANT'S SECOND MOTION TO DISSOLVE DETENTION ORDER ADOPTION OF PREVIOUS MOTION AND MEMORANDUM

COMES NOW Franco Nicoletti, by the undersigned counsel and makes this Second Motion to Dissolve Detention Order and as ground would state the following:

1. The Defendant would adopt his previous Motion to Dissolve Detention Order together with authorities as if it were set forth in haec verba.

2. That the facts, as well as the law still are applicable that were raised in the previous Motions, and the Defendant would just furnish the Court new factors to consider in light of the law as set out in the previous memoranda.

3. The Defendant's trial before Judge Gonzalez [the Defendant having been on bond on that matter for a period of time] resulted in a hung jury. Rule 29 Motions are still pending memoranda and ruling.

4. The matter before Judge Hurley has been reset to the November docket. Ms. Hart, the Defendant's expert, is attempting to examine all the bonds as the Government's expert, by report the undersigned received on August 30, 1997 [but see Motion for Particulars attached] raises issues as to what the Government experts are in fact saying since the bonds are purported and alleged to be counterfeit, the examination is crucial. The Defendant is being held in Palm Beach.

5. The Defendant has been in custody for some eleven months at this juncture.

6. The Defendant submits that the continued detention of the Defendant is violative of the Constitution of the United States; the length and now manner of confinement has had a deleterious effect on the Defendant that makes it difficult to prepare for trial.

7. There are alternatives to pre trial detention that the Court could explore and then set that could satisfy the statutory requirements while allowing the Defendant to be released.

A.2

WHEREFORE the Defendant requests that the Court grant his Motion.

I HEREBY CERTIFY that a true and correct copy of the foregoing Motion has been furnished by U.S. Mail to Scott Behnke, Office of the United States Attorney, 299 East Broward Boulevard, Fort Lauderdale, Florida 33301, this ___ day of October, 1997.

>FRED HADDAD
>One Financial Plaza, Suite 2612
>Fort Lauderdale, Florida 33394
>Tel: (954) 467-6767
>
>By: *Signed*
>FRED HADDAD
>FBN: 180891